IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 8:07-cr-00170-SCB-MSS-1 |
| | ) | |
| PAUL F. LITTLE | ) | |
| a/k/a Max Hardcore | ) | |
| a/k/a MAXWORLD ENTERTAINMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States has reviewed the Probation Office's initial Presentence Reports and the

September 29, 2008 Addendums to the Presentence Reports.  The United States does not dispute

any of the facts set out therein.  As explained below, the United States also agrees with the

Probation Office's rejection of the five objections raised by Defendants.

The United States objects, however, to the Probation Office's decision to exclude the

gross revenue that Defendants generated by distributing the Max Hardcore website during 2005

and 2006.  The United States respectfully submits that this revenue was properly included in the

initial draft reports and that Defendant's arguments for exclusion are meritless.

I.      **THE PROBATION OFFICE PROPERLY APPLIED THE "DISTRIBUTION FOR PECUNIARY GAIN" ENHANCEMENT REGARDING THE CHARGED DVDS**

The Probation Office found that "between January 1, 2005 and June 25, 2008, the

defendants sold 734 of the [charged] DVDs for a total retail value of $40,340.50."  Little PSR ¶

45; MWE PSR ¶ 46.  Based on this factual finding, the Probation Office applied a 6-level

enhancement under United States Sentencing Guidelines ("USSG") § 2G3.1(b)(1)(A) for distribution for pecuniary gain.  Little  PSR ¶ 54; MWE PSR ¶ 68.

Defendants do not dispute the revenue calculation set forth in these paragraphs.  Nor do they dispute that at least a 5-level enhancement is applicable under Section 2G3.1(b)(1)(A), because Defendants distributed the charged DVDs for profit.  *See* Letter from Sirkin to Washington, dated Sept. 11, 2008, at 3 (Ex. 1) ("it is conceded that the Defendant Max World did distribute the materials found to be obscene in this Court 'for pecuniary gain'").

Defendants claim, however, that only the particular distribution into the Middle District of Florida charged in this case is relevant for purposes of the enhancement.  *See id.* at 2-3; Letter from Benjamin & Douglas to Washington, dated Sept. 16, 2008, at 2 (Ex. 2).  This is so, according to Defendants, because the DVDs were only adjudged to be obscene in the Middle District of Florida and they therefore cannot be held liable for distributions into other jurisdictions (which hypothetically could find the DVDs not obscene).  *See id.*  Defendants' contention is legally erroneous.

As a threshold matter, Defendants mischaracterize the definition of "distribution" for purposes of the enhancement.  The applicable Guideline provision expressly defines "distribution" to include:

> Any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of obscene matter.

U.S.S.G. § 2G3.1 cmt. n.1.[1]

As demonstrated at trial and found by the jury, Defendants did all of these acts as to the five DVDs.  Defendants produced them, advertised them for sale via the maxhardcore.com

website, injected them into the stream of commerce by transporting them, and possessed

additional copies with intent to do likewise.  Indeed, it is undisputed that the charged DVDs were

advertised via the maxhardcore.com website across the World Wide Web, including into the

Middle District of Florida.  Defendants did all of this to make a profit – and they made a

substantial one.

Moreover, Defendants' distribution of the five DVDs beyond the Middle District of

Florida constitutes "relevant conduct" for purposes of calculating the applicable Guideline range.

Section 2G3.1 (the applicable Guideline) requires the Court to determine if "the offense"

involves, *inter alia*, distribution for pecuniary gain.  "Offense" is defined as "the offense of

conviction *and all relevant conduct under § 1B1.3*."  U.S.S.G. § 1B1.1 (emphasis added).

Because the offenses of conviction are expressly subject to grouping under Section

3D1.2(d), the Court is to apply the definition of "relevant conduct" contained in Section

1B1.3(a)(2).  That section defines "relevant conduct" to include "all acts and omissions"

committed, abetted, counseled, commanded, induced, procured, or willfully caused by the

defendant, "that were part of the same course of conduct or common scheme or plan as the

offense of conviction."  *Id.* § 1B1.3(a)(2).  Thus, relevant conduct is far from limited to that

underlying the offense of conviction.

Comment Nine to Section 1B1.3 explains that conduct is from the "same course" where it

is "sufficiently connected or related" as to be "part of a single episode, spree, or ongoing series

of offenses."  *Id.* cmt. n.9.  Comment Nine also explains that "[f]or two or more offenses to

constitute part of a common scheme or plan, they must be substantially connected to each other

---

[1]     In rejecting Defendant's objection, the Probation Office correctly noted the definition of
"distribution," but mis-cited the applicable Guideline section.

by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.*

Under this broad definition, Defendants' distribution of the charged DVDs anywhere is relevant conduct. Defendants produced and replicated the DVDs for mass commercial distribution. Defendants used the maxhardcore.com website to advertise and sell the DVDs. Defendants transported the DVDs to any location in the United States where a willing buyer existed. That all ninety-three federal districts have not convicted Defendants of the same obscenity crimes as in this case is immaterial to the issue of relevant conduct.

The Court may find helpful analogies in cases involving relevant conduct in a number of other contexts, including child pornography, narcotics and fraud.

Courts often include uncharged images of child pornography in their calculation of Guidelines enhancements relating to number or types of images. For instance, the Eleventh Circuit has affirmed the application of 4-level enhancement for uncharged images of sadistic and masochistic abuse even though those images did not form the basis of the offense of conviction – transportation of child pornography. *United States v. Dunlop*, 279 F.3d 965, 966 (11th Cir. 2002).

This conclusion is wholly consistent with the intent of Congress and the Sentencing Commission. In the Statement of Reasons for Amendment that accompanied the November 1, 2001 amendment to the relevant conduct provision, the Commission noted that under Section 1B1.3(a)(2), "additional images of child pornography (often involved in the case, but outside of the offense of conviction) shall be considered by the court in determining the appropriate sentence for the defendant if the conduct related to those images is part of the same course of

conduct or common scheme or plan." U.S.S.G. app. C, Amendment 615 (parenthetical in original). Under this authority, there is no reason that additional copies of the very DVDs that this Court has adjudged to be obscene should be excluded from the calculation of Defendants' distribution for pecuniary gain.

In the narcotics context, courts routinely include, as relevant conduct, uncharged amounts of narcotics for purposes of calculating the applicable Guideline range. *See, e.g.*, *United States v. Ellis*, 975 F.2d 1061, 1067 (4th Cir. 1992) (upholding sentence based on 1.6 kilograms of cocaine base in conspiracy, although defendant only pled guilty to possession with intent to distribute 4.4 grams). So too have courts considered the entire amount of money taken in a fraudulent scheme, even though a much smaller amount was charged in a count of conviction. *See, e.g.*, *United States v. Photogrammetric Data Servs.*, 259 F.3d 229, 257-59 (4th Cir. 2001) (upholding sentenced based on calculated loss of over $435,000 where indictment charged false invoices totaling only about $19,000); *United States v. Watford*, 894 F.2d 665, 668-70 (4th Cir. 1990) (similar result in fraud case).

For the foregoing reasons, the United States concurs in the Probation Office's assessment of a 6-level increase for distribution for pecuniary gain under Section 2G3.1(b)(1)(A) for the retail value of the 734 copies of the charged DVDs distributed by Defendants.

## II.     WEBSITE SUBSCRIPTION REVENUE SHOULD BE INCLUDED IN THE CALCULATION OF THE "DISTRIBUTION FOR PECUNIARY GAIN" ENHANCEMENT

The Probation Office initially included in its calculation of the amount of pecuniary gain $1,179,371.25 in revenue generated in 2005 and 2006 from the sale of memberships to the maxhardcore.com website. The Probation Office thus initially concluded that an 16-level increase under Section 2G3.1(b)(1)(A) should be applied (combining revenues from website

subscriptions and DVD sales).  The Probation Office deleted the website subscriptions from its calculation of the enhancement, however, after Defendants objected to its inclusion.[2]  For the reasons set forth above and below, the United States respectfully submits that the Probation Office's initial analysis was correct.  Therefore, the Court should apply a 16-level enhancement under Section 2G3.1(b)(1)(A) for distribution of pecuniary gain.

Defendants objected to the inclusion of the website subscriptions on two grounds.  First, they argued that the website contained over 900 videos and trailers and there was no proof as to how many members of the site actually accessed the five video clips adjudged to be obscene.  *See* Letter from Sirkin to Washington, Ex. 1, at 2.  Second, they argued that none of the video clips accessed by anyone outside of the Middle District of Florida should be counted, because they have not been adjudged to be obscene in the districts of receipt.  *See* Letter from Benjamin & Douglas to Washington, Ex. 2, at 2.

The fundamental flaw in Defendants' arguments and the Probation Office's conclusion is that they focus on whether, and where, the website members actually accessed (*i.e.*, received) the charged video trailers.  The flaw is both legal and factual.

A.       **Defendants Distributed the Video Trailers As a Matter of Law**

The "distribution for pecuniary gain" enhancement applies where the defendant "distribut[ed]" the material.  Contrary to Defendants' assertion, receipt is not the *sine qua non* of distribution.  Section 2G3.1 expressly defines distribution to include "any act" relating to the transfer of the obscene material including its "possession with intent to distribute, production,

---

[2]       The difference between including and excluding these website subscriptions is 10 levels under Section 2G3.1(b)(1)(A) and the cross reference to Section 2B1.1.

advertisement and transportation."  U.S.S.G. § 2G3.1 cmt. n.1; *United States v. Probel*, 214 F.3d 1285, 1288 (11th Cir. 2000).

Section 2G3.1 speaks directly to how "distribution" is defined where the defendant posts material on a website:

> *Distribution includes posting material involving the sexual exploitation of a minor*
> *on a website for public viewing . . .*

*Id.* (emphasis added).  Posting the video trailers on the maxhardcore.com website is exactly what Defendants did.  Their conduct therefore is textbook "distribution" for purposes of the Section 2G3.1(b)(1)(A) enhancement.

The Court need not rely only on the express, unambiguous language of the Guidelines though.  In interpreting the companion "distribution" enhancement available under the child pornography Guideline (2G2.2), the Eleventh Circuit has noted that the term "distribution" is extremely broad.  *See Probel*, 214 F.3d at 1288.  In *Probel*, the defendant challenged application of the distribution for pecuniary gain enhancement to his sentence for transportation of child pornography.  After noting that "distribution" includes "production, transportation and possession with intent to distribute," the Court stated that the Guidelines make clear that even those individuals who are only indirectly involved in distribution for profit, "such as producers and transporters," are subject to the enhancement.  *Id.*  Based on its reading of the Guidelines, the Eleventh Circuit held that "the term 'distribution' should be given its ordinary meaning of 'to dispense' or 'to give out or deliver."  *Id.* (quoting Webster's Third New International Dictionary 660 (1981)).

In addition, a number of courts have held that a child pornography defendant who makes pornographic images available on the internet for download or viewing has "distributed" them

for purposes of the distribution of pecuniary gain enhancement.  Because the language of the "distribution for pecuniary grain" enhancement under the Guideline sections for child pornography and obscenity crimes is identical, the reasoning of those courts applies equally here.

Indeed, the Tenth Circuit has rejected the very argument advanced by Defendants (and accepted by the Probation Office) – that a defendant cannot be subjected to the "distribution" enhancement absent evidence that he "actively transfer[ed] possession to another."  *United States v. Shaffer*, 472 F.3d 1219, 1223-25 (10th Cir. 2007).  In *Shaffer*, the defendant was convicted of distribution and possession of child pornography based on his use of a peer-to-peer application known as Kazaa.  He argued that the distribution enhancement should not apply because he merely left files in an electronic folder on his computer, from which they could be downloaded by other Kazaa users.  *See id.* at 1223.  Because there was no proof that anyone actually accessed these files, Shaffer argued that he did not "distribute" them.  Shaffer claimed that he could be subjected to the distribution enhancement only if the government could prove that he actively transferred possession to another person who accessed the files from his "shared" folder.  Instead, he characterized himself as a "passive participant," who merely made the material available for downloading or access by other users.  *See id.*

The Tenth Circuit rejected Shaffer's restrictive interpretation of "distribution."  Applying the ordinary meaning of the term, the Court had "little difficulty in concluding that Mr. Shaffer distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others."  *Id.*  As the court elaborated concerning those who use the internet to make contraband images available to others who may freely choose to access them:

> [Shaffer] may not have actively pushed pornography on Kazaa users, but he freely allowed them access to his computerized stash of images and videos and openly

invited them to take, or download, those items.  It is something akin to the owner of a self-serve gas station.  The owner may not be present at the station, and there may be no attendant present at all.  And neither the owner nor his or her agents may ever pump gas.  But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card.  Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring," or "dispersing" gasoline; the *raison d'etre* of owning a gas station is to do just that.

*Id.* at 1223-24.[3]

Although it did so with an economy of discussion, the Eleventh Circuit similarly has upheld the application of distribution enhancement where the defendant made images of child pornography available for download through peer-to-peer software.  *United States v. Mathenia*, 409 F.3d 1289 (11th Cir. 2005); *see also United States v. Abraham*, No. 05-344, 2006 WL 3052702, at *8 (W.D. Pa. Oct. 24, 2006) (similar holding and reasoning in peer-to-peer context); *cf. United States v. Williams*, 253 F.3d 789, 795-96 (4th Cir. 2001) (mailing of pornography to another in expectation of receiving similar materials in return constituted "distribution for pecuniary gain.").[4]

---

[3]    The Tenth Circuit analogized this internet distribution to the distribution of narcotics. *United States v. Shaffer*, 472 F.3d 1219, 1225 (10th Cir. 2007).  The court noted that "[u]nder narcotics laws, the term 'distribution' has been read to criminalize virtually any 'act[] perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price." *Id.* (citing *United States v. Jackson*, 213 F.3d 1269, 1296 (10th Cir. 2000), *vacated and remanded on other grounds*, 531 U.S. 1038 (2000)).

[4]    Various other courts have likewise held that making images accessible to the internet community constitutes "distribution." *See, e.g.*, *United States v. Carani*, 492 F.3d 867, 875-76 (7th Cir. 2007); *United States v. Griffin*, 482 F.3d 1008, 1011-12 (8th Cir. 2007); *United States v. Darway*, No. 06-4077, 2007 WL 3353216, at *3 (6th Cir. Nov. 9, 2007); *United States v. Gunderson*, 345 F.3d 471, 473 (7th Cir. 2003); *United States v. Abraham*, No. 05-344, 2006 WL 3052702, at * 8 (W.D. Pa. Oct. 24, 2006).

As with the gas station owner analogy, this precedent compels the conclusion that Defendants "distributed" the video trailers for pecuniary gain to all who purchased access to the maxhardcore.com website.  Defendants made public portions of the website available to all website surfers.  They advertised members-only content, including video trailers available for download, to these individuals.  Once they received a subscription payment, they made the members-only portion of the website available to their customers.  Those customers were then free to access any content on the website, including the video trailers.  Whether a member accessed one of the five video trailers found to be obscene is immaterial.  Defendants put the material out on the internet for any paying customer to access.  That such access was "self serve" does not change the fact that Defendants were in the business of commercially distributing video trailers from their massive website.

### B. Defendants Distributed All Contents of the Website from the Middle District of Florida

As they did with the DVD sales, Defendants assert that only those video trailers actually received by users in the Middle District of Florida are relevant.  They claim that there is no evidence to show who within this district accessed these trailers.  Therefore, they argue that all of the revenue should be excluded.  This argument must fail because it overlooks a critical fact.

Defendants ignore the adjudicated fact that the maxhardcore.com website was hosted in Tampa during 2005 and almost all of 2006.  At trial, the Government admitted the business records of Candid Hosting, which hosted Defendants' website at its Tampa location around the corner from the courthouse from March 7, 2003 to November 15, 2006.  *See* Candid Business Records, Trial Exhibit 10 (attached as Ex. 3).

10

Thus, everything on that website was distributed *from* this district for the relevant time period.  Obscenity violations may be prosecuted in districts from which the material is distributed, through which it travels, or to which it is sent.  *See, e.g.*, *United States v. Bagnell*, 679 F.2d 826, 830 (11th Cir. 1982); *United States v. Thomas*, 74 F.3d 701, 709 (6th Cir. 1996).  Thus, whether individuals in other districts accessed the charged video trailers and whether a jury in those districts would find the trailers obscene is irrelevant.  This Court has found the trailers obscene, and they were distributed for pecuniary gain via a website that was hosted in this district during the relevant time.

For the foregoing reasons, the Court should apply a 10-level increase to the offense level for the distribution of the video trailers via website subscriptions, pursuant to Section 2G3.1(b)(1)(A).  The total distribution enhancement (considering website subscriptions and DVD sales) should equal 16 levels.

## III.   THE PROBATION OFFICE PROPERLY APPLIED A 4-LEVEL ENHANCEMENT FOR MATERIAL THAT PORTRAYS SADISTIC OR MASOCHISTIC CONDUCT OR OTHER DEPICTIONS OF VIOLENCE

The Probation Office properly rejected Defendants' argument that the Section 2G3.1(b)(4) enhancement was inapplicable because the performers in the charged DVDs and video trailers actually enjoyed the conduct in which they were engaged.  As the Probation Office noted, it is the *portrayal* of the conduct, not the conduct itself, that must be sadistic or masochistic or depict violence.  It is not necessary for the government to show that the conduct was actually sadistic or masochistic or violent.  *See, e.g.*, *United States v. Hoey*, 508 F.3d 687, 693 (1st Cir. 2007).  As the *Hoey* court noted, "[t]he Guidelines simply do not require the image

to be an accurate documentation of real sadistic conduct." *Id.* Instead, applying the ordinary meaning of the term "portrayal," it is enough that the videos "enact" such conduct. *See id.*

That said, the United States respectfully submits that the material found to be obscene in this case portrays conduct that is actually sadistic and violent. Although the Guidelines do not define these terms, their ordinary meanings are clear enough. Sadism is "the infliction of pain upon a love object as a means of obtaining sexual release;" "the satisfaction of outwardly directed destructive impulses as a source of libidinal gratification;" "a delight in physical and mental cruelty;" or "excessive cruelty." *Id.* (internal quotations omitted); *United States v. Garrett*, 190 F.3d 1220, 1224 (11th Cir. 1990) (insertion of foreign object into anus of child was sadistic and violent); *United States v. Starr*, 533 F.3d 985, 1001 (8th Cir. 2008) (similar).

The Court has viewed hours of Defendant Little's conduct in the obscene materials and the promotional material contained on his website and in his videos. It has seen him insert foreign objects – including speculums and other objects into the anuses and vaginas of women. It has seen him pry women's mouths open with dental equipment and then urinate and ejaculate into their mouths, while directing them to gurgle. It has seen him slap and spit on women as he sodomizes them. It has seen him choke women with his penis to the point of repeated vomiting. It also has seen some of these women wince in pain and cry while Defendant Little carried out his acts. It has heard some of these women cry and plead for him to stop. It has seen the sexual gratification that he receives from all of this conduct.

The Probation Office properly applied this enhancement.

12

## IV.    THE PROBATION OFFICE PROPERLY CALCULATED DEFENDANT LITTLE'S CRIMINAL HISTORY

As the jury found, Defendant committed the instant offenses on January 18, 2006 and March 23, 2007.  The Probation Office correctly noted that on February 6, 2007, Defendant Little was placed on 36 months of probation for a local alcohol-related offense.  Thus, Defendant committed five of the instant offenses within two months of being placed on probation.  Therefore, Defendant Little's criminal history is properly scored as Category II.

## V.    DEFENDANT MAX WORLD ENTERTAINMENT IS NOT ENTITLED TO A REDUCTION FOR EFFECTIVE COMPLIANCE AND ETHICS PROGRAM

As the Probation Office correctly noted, Defendant Max World Entertainment does not have an effective compliance and ethics program.  Section 8B2.1 was enacted in response to the concerns underlying the Sarbanes-Oxley Act of 2002.  Max World Entertainment Inc. is merely the alter-ego of Defendant Little – the star, producer and profiteer of the obscene materials.  He (and thus his corporation) engaged in the criminal conduct at issue.  There was no program to ensure that Defendant Little complied with the law.  As is clear from the website itself, Defendant Little flouted the law in the name of free speech.  He certainly did not police himself "to prevent or detect criminal conduct."  U.S.S.G. § 8B2.1(a)(1).

## VI.    DEFENDANT MAX WORLD ENTERTAINMENT IS NOT ENTITLED TO A REDUCTION FOR ACCEPTANCE OF RESPONSIBILITY

The Probation Office properly denied Defendant Max World Entertainment's request for a two-level reduction for acceptance of responsibility.  As the Probation Office noted, this adjustment is generally not available to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt.  *See* U.S.S.G. § 3E1.1(a) cmt. n.2.

Here, Defendant Max World Entertainment did just that.  It denied that the charged material was obscene, and it denied that it was responsible for distributing that material.

The Application Notes to Section 3E1.1 provide six factors to be utilized in determining whether a defendant qualifies for a reduction of points for acceptance.  One factor requires a truthful admission of the conduct compromising the offenses of conviction and admitting relevant conduct for which the defendant is accountable.  *See* U.S.S.G. §3E1.1 cmt. n.1a.  Specifically, the note provides that a defendant who falsely denies, or frivolously contests relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.  Defendant Little, who is Max World Entertainment, continues to do so to this day.  Defendant Little's flagrant denial of wrongdoing and disregard for his actions contributing to his conviction are entirely inconsistent with acceptance of responsibility.

Defendant Little's statements prior to, during, and following trial reflect his disdain for the government's prosecution, denial of wrongdoing and blatant disregard for the verdict.  During an interview with the *St. Petersburg Times* conducted while the jury was deliberating, Defendant Little was quoted as saying:  "Listen to this, this is Edward McAndrew, prosecuting attorney: 'These videos are not just offensive, they're an assault on your senses.  They bludgeon you to the point of exhaustion.'" "I'm going to put this on the cover of my next movie, babe!  Talk about a ringing endorsement."  Ben Montgomery, *To the Jury, Obscene; To Him, A Day's Work*, St. Petersburg Times, June 8, 2008, at 1A (Ex. 4).

Following the verdict, when interviewed by *Adult Video News*, Defendant Little stated, "I should have got off for this nonsense."  Mark Kernes, *The U.S. v. Max Hardcore, Controversial Director Found Guilty on All Counts in Florida Obscenity Trial*, at http://avn.com/legalnews

(last visited July 2008).  In response to the forfeiture of Defendants' domain names, Defendant Little has publicly stated:  "I can replace the domain names, maybe make it maxhardcorexxx.com, but as long as I still have my house, I figure I'm ahead of the game."  *Id.*

These statements are not indicative of an individual who possesses any level of acceptance of the crimes he has committed.  Furthermore, they indicate Defendant's intent that it will be business as usual for Max Hardcore.

Under similar circumstances, the Sixth Circuit has affirmed the denial of an obscenity defendant's request for acceptance points following conviction at trial.  *See United States v. Thomas*, 74 F.3d 701, 716 (6th Cir. 1996).  The Court noted that neither defendant had acknowledged the illegal, contraband character of the material found to be obscene.  *See id.* Instead, the Court assigned heavy weight to the fact that the defendants were unrepentant, and continued to engage in the same type of behavior as charged in the offense of conviction.  *See id.* There was no evidence, the court noted, that the defendant "had put aside making their living through the same means."  *Id.*

The Court should not reward Defendants' conduct with acceptance points.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

ANDREW G. OOSTERBAAN
Chief
Department of Justice
Child Exploitation and Obscenity Section
Criminal Division

By:    *s/ Edward J. McAndrew*
      Edward J. McAndrew
      Trial Attorney
      U.S. Department of Justice
      Criminal Division
      Child Exploitation and Obscenity Section
      1400 New York Avenue, N.W.
      Washington, D.C. 20530
      400 North Tampa Street, Suite 3200
      Telephone:    (302) 573-6150
      Facsimile:    (302) 573-6220
      E-Mail: ed.mcandrew@usdoj.gov

By:    *s/ LisaMarie Freitas*
      LisaMarie Freitas
      Trial Attorney
      U.S. Department of Justice
      Criminal Division
      Child Exploitation and Obscenity Section
      1400 New York Avenue, N.W.
      Washington, D.C. 20530
      400 North Tampa Street, Suite 3200
      Telephone:    (202) 353-0263
      Facsimile:    (202) 514-1793
      E-mail: LisaMarie.Freitas@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Government's Memorandum in Aid of Sentencing was

served electronically this 1st day of October 2008 on:

H. Louis Sirkin, Esq.
Scott Ryan Nazzarine, Esq.
Jennifer M. Kinsley, Esq.
Sirken, Pinales & Schwartz LLP
105 West Fourth Street
Suite 920
Cincinnati, Ohio 45202

James S. Benjamin, Esq.
Benjamin & Aaronson, P.A.
One Financial Plaza, Suite 1615
Fort Lauderdale, Florida 33394

Jeffrey J. Douglas, Esq.
1717 Fourth Street
Third Floor
Santa Monica, California 90401

By:     _s/ Edward J. McAndrew_
Edward J. McAndrew
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation and Obscenity Section
1400 New York Ave., N.W., Suite 600
Washington, D.C. 20005
400 North Tampa Street, Suite 3200
Telephone:     (302) 573-6150
Facsimile:      (302) 573-6220
E-Mail: ed.mcandrew@usdoj.gov

17